
Shane M. Biornstad - Bar No. 250202
SBiornstad@shulmanbastian.com
**SHULMAN BASTIAN FRIEDMAN BUI& O'DEA LLP**
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone:  (949) 340-3400
Facsimile:  (949) 340-3000

Craig Stewart (Admitted *pro hac vice*)
Shaun C. Kennedy (Admitted *pro hac vice*)
Alexandria E. Pierce (Admitted *pro hac vice*)
**HOLLAND & HART LLP**
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202
Telephone: (303) 295-8000
Facsimile: (303) 957-5460

Attorneys for DZYNE Technologies, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DZYNE TECHNOLOGIES, LLC<br><br>  Plaintiff,<br><br>  v.<br><br>SPACEFLIGHT, INC.<br><br>  Defendant. | Case No. 2:23-cv-10188-MEMF (ADSx)<br><br>Judge Maame Ewusi-Mensah Frimpong<br><br>**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Trial Date: August 11, 2025<br>Time: 8:30 a.m.<br>Courtroom: 8B |

   Pursuant to Local Rule 16-4, Plaintiff DZYNE Technologies, LLC ("DZYNE") respectfully submits the following Memorandum of Contentions of Fact and Law.

I.  **SUMMARY OF DZYNE'S CLAIMS**

DZYNE pursues the following claims against Defendant Spaceflight, Inc. ("Spaceflight"):

    a.    **Summary Statement of Claims Plaintiff Pleaded (L.R. 16-4.1(a))**

**Claim 1: Breach of Contract**

Spaceflight breached the agreements with DZYNE when, after DZYNE exercised its independent and unconditional right to terminate for convenience the Launch Services Agreement, as amended in the Amended and Restated Launch Services Agreement (as amended, the "LSA"), and transmitted a valid notice of termination to Spaceflight within forty-five days after the Parties executed the Transfer Agreement, it refused to produce a termination settlement proposal within the requisite time period following notice of the termination and refused to return to Spaceflight funds which DZYNE had received and not spent pursuant to the parties' agreements.

**Claim 2: Unjust Enrichment**

To the extent that Spaceflight did not breach its agreements with DZYNE, Spaceflight was unjustly enriched by reason of receiving funds for services it did not perform following termination of the LSA.

**Claim 3: Declaratory Judgment**

For the reasons set forth in DZYNE's motion for summary judgment (ECF No. 61), DZYNE is entitled to judgment on liability on its breach of contract claim. Damages are to be decided by the jury.

    b.    **The Elements Required to Establish Plaintiff's Claims (L.R. 16-4.1(b))**

**Claim 1: Breach of Contract**

To recover damages from Spaceflight for breach of contract, DZYNE must prove all of the following:

1. That DZYNE and Spaceflight entered into a contract: the LSA and the Transfer Agreement (together, the "Agreements");
2. That DZYNE did all, or substantially all, of the significant things that the Agreements required it to do, or DZYNE was excused from certain requirements of the Agreements because of Spaceflight's failure to adhere to contract terms;

3. That DZYNE terminated the LSA within forty-five days of the Parties' execution of the Transfer Agreement;

4. That Spaceflight failed to comply with the LSA's termination for convenience provisions and the Transfer Agreement's provision requiring the submission of a settlement proposal within thirty days of DZYNE's termination of the LSA;

5. That DZYNE was harmed; and

6. That Spaceflight's breach of the Agreements was a substantial factor in causing DZYNE's harm.

Judicial Counsel of California Civil Jury Instructions ("CACI") 303 Breach of Contract – Essential Factual Elements

**Claim 2: Unjust Enrichment**

To recover damages from Spaceflight for unjust enrichment, DZYNE must prove the following:

1. That Spaceflight received funds from DZYNE pursuant to the Agreements;

2. That Spaceflight did not perform the services required by the LSA prior to its termination, thereby causing Spaceflight to receive a benefit under the Agreements that it otherwise would not have achieved; and

3. That DZYNE was harmed.

CACI 4410; *Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal. App. 5th 230, 238 (2018) ("The elements of a cause of action for unjust enrichment are simply stated as a receipt of a benefit and unjust retention of the benefit at the expense of another" (quotation omitted)).

**Claim 3: Declaratory Judgment**

To prove its declaratory judgment claim, DZYNE must prove the following:

1. That DZYNE and Spaceflight entered into a contract: the LSA and the Transfer Agreement;

2. That DZYNE did all, or substantially all, of the significant things that the Agreements required it to do, or DZYNE was excused from certain requirements of the Agreements because of Spaceflight's failure to adhere to contract terms;

3. That DZYNE terminated the Amended LSA within forty-five days of the Parties' execution of the Transfer Agreement;

4. That Spaceflight failed to comply with the LSA's termination for convenience provisions and the Transfer Agreement's provision requiring the submission of a settlement proposal within thirty days of DZYNE's termination of the LSA.

CACI 303.

    c.    **Key Evidence in Support of Each Claim (L.R. 16-4.1(c))**

**Claim 1: Breach of Contract**

DZYNE will demonstrate that either that the LSA permitted DZYNE to terminate the Parties' agreement for the Government's convenience and that the Government terminated the WeatherSAT Project for convenience, or that DZYNE had the unconditional right to terminate the LSA for DZYNE's convenience. This will be demonstrated by the Agreements, the Government Directives transmitted to DZYNE to cancel the WeatherSAT Project, and other communications between the parties and the Government. Further, the testimony of Ed Smetak and Sarah Wilt will support this construction of the Agreements. The testimony of Professor Christopher Yukins will rebut the expert testimony of Spaceflight's expert witness, John Chierichella, to the extent that Mr. Chierichella is permitted to provide what DZYNE believes is inadmissible expert testimony of his legal opinions and his assumptions about the states of mind of the parties involved in the dispute.

Under either theory, the jury must determine that Spaceflight breached the parties' Agreements when it failure to comply with the LSA's termination for convenience provisions and the Transfer Agreement's provision requiring the submission of a settlement proposal within thirty days of DZYNE's termination of the LSA will be supported by Spaceflight's own admissions that it failed to do either.

DZYNE will then prove that it is entitled to recover the $7 million that it transferred to Spaceflight for performance of the Agreements, and that Spaceflight did not utilize those funds to perform the Agreements, so that DZYNE can fulfill its obligations to the Government to return unused WeatherSat project funds. The Parties do not dispute that DYZNE transferred $7,839,898 under the Agreements. Those amounts were to be used solely to perform the WeatherSat project—

the majority of which was to be paid to Virgin Orbit, the parties' selected launch vehicle provider. DZYNE will demonstrate that Spaceflight spent only approximately $1 million of those funds on actual project costs: $800,000 to Virgin Orbit (which is demonstrated by Spaceflight's own admissions in emails to DZYNE and by Virgin Orbit's bankruptcy filings) and a minimal amount on labor (which is also demonstrated by Spaceflight's own admissions in emails to DZYNE). DZYNE will demonstrate that any newly-claimed expenditures are inadequately supported and lack credibility by Spaceflight's own prior admissions.

**Claim 2: Unjust Enrichment**

DZYNE will demonstrate that it advanced $7,839,898 to Spaceflight under the Agreements. Those amounts were to be used solely to perform the WeatherSat project—the majority of which was to be paid to Virgin Orbit, the parties' selected launch vehicle provider. DZYNE will demonstrate that Spaceflight spent only approximately $1 million of those funds on actual project costs: $800,000 to Virgin Orbit (which is demonstrated by Spaceflight's own admissions in emails to DZYNE and by Virgin Orbit's bankruptcy filings) and a minimal amount on labor (which is also demonstrated by Spaceflight's own admissions in emails to DZYNE). DZYNE will demonstrate that Spaceflight's retention of these funds following termination of the LSA, and its failure to provide a settlement proposal under the Transfer Agreement, unjustly enriched Spaceflight. DZYNE will demonstrate that any newly-claimed expenditures are inadequately supported and lack credibility by Spaceflight's own prior admissions.

DZYNE will prove that to the extent it is unable to recover those amounts pursuant to its breach of contract claim, Spaceflight has been unjustly enriched. The testimony of Ed Smetak, the documents showing amounts paid to Spaceflight, and documents including Spaceflight's own interrogatory answers regarding amounts Spent by Spaceflight will support DZYNE's claim.

**Claim 3: Declaratory Judgment**

DZYNE will demonstrate that either that the LSA permitted DZYNE to terminate the Parties' agreement for the Government's convenience and that the Government terminated the WeatherSAT Project for convenience or that DZYNE had the unconditional right to terminate the LSA for DZYNE's convenience. This will be demonstrated by the Agreements, the Government

Directives transmitted to DZYNE to cancel the WeatherSAT Project, and other communications between the parties and the Government. Further, the testimony of Ed Smetak and Sarah Wilt will support this construction of the Agreements. The testimony of Professor Christopher Yukins will rebut the expert testimony of Spaceflight's expert witness, John Chierichella, to the extent that Mr. Chierichella is permitted to provide what DZYNE believes is inadmissible expert testimony of his legal opinions and his assumptions about the states of mind of the parties involved in the dispute.

Under either theory, the jury must determine that Spaceflight breached the Parties' Agreements when it refused to recognize the termination of the Amended LSA and failed to produce a termination settlement proposal. Spaceflight's failure to comply with the LSA's termination for convenience provisions and the Transfer Agreement's provision requiring the submission of a settlement proposal within thirty days of DZYNE's termination of the LSA will be supported by Spaceflight's own admissions that it failed to do either.

### d. Summary of Defendant's Counterclaims and Affirmative Defenses (L.R. 16-4.1(d)

#### Counterclaim 1: Anticipatory Breach

Spaceflight contends that DZYNE anticipatorily breached the Agreements by reason of DZYNE's and the Government's termination for convenience. Spaceflight's anticipatory breach of contract fails because (1) DZYNE did not breach the parties' Agreements; (2) Spaceflight itself materially breached the Agreements prior to any purported breach by DZYNE; (3) performance of the Agreements was rendered impossible because of AFRL's termination of the WeatherSAT project; (4) AFRL's termination of the WeatherSAT project frustrated the purpose of the Agreements; (5) Spaceflight waived DZYNE's performance under the Agreements by allowing, both expressly and tacitly, any purported requirement that DZYNE supply payload under the Agreements by reason of Virgin Orbit's failure to provide a rocket to launch such payload into space; and (6) Spaceflight has no damages.

#### Counterclaim 2: Breach of the Implied Covenant of Good Faith and Fair Dealing

Spaceflight contends that DZYNE breached the implied covenant of good faith and fair dealing. This claim fails for the same reasons (set forth below) that Spaceflight's breach of contract

claim fails, and for the additional reason that DZYNE acted in good faith and fairly under the parties' Agreements.

**Counterclaim 3: Breach of Contract**

Spaceflight contends that DZYNE breached the Agreements by reason of DZYNE's and the Government's termination for convenience. Spaceflight's breach of contract fails because (1) DZYNE did not breach the parties' Agreements; (2) Spaceflight itself materially breached the Agreements prior to any purported breach by DZYNE; (3) performance of the Agreements was rendered impossible because of AFRL's termination of the WeatherSAT project; (4) AFRL's termination of the WeatherSAT project frustrated the purpose of the Agreements; (5) Spaceflight waived DZYNE's performance under the Agreements by allowing, both expressly and tacitly, any purported requirement that DZYNE supply payload under the Agreements by reason of Virgin Orbit's failure to provide a rocket to launch such payload into space; and (6) Spaceflight has no damages.

**Counterclaim 4: Declaratory Judgment**

Spaceflight contends that it is entitled to a declaratory judgment on its breach of contract claim. Spaceflight's declaratory judgment claim fails for the same reasons its breach of contact claim fails, with the exception of factor (6) regarding Spaceflight's lack of damages.

**Spaceflight's Affirmative Defense 1: No damages and therefore no standing**

Spaceflight contends that because DZYNE has suffered no damages, it has no standing to bring its claims.

**Spaceflight's Affirmative Defense 2: Unclean hands**

Spaceflight contends that DZYNE has unclean hands from its anticipatory breach of contract.

**Spaceflight's Affirmative Defense 3: Public policy**

Spaceflight contends that DZYNE's claims are barred because they are against public policy and would require performance of an illegal act under 31 U.S.C. § 1502(a).

**Spaceflight's Affirmative Defense 4: Public policy**

Spaceflight contends that DZYNE's claims are barred because they are against public policy and would require performance of an illegal act under Defense Federal Acquisition Regulation Supplement 252.244-7000.

**Spaceflight's Affirmative Defense 5: DZYNE lacks standing to bring claims on behalf of the United States Government**

Spaceflight contends that DZYNE's lacks standing to bring claims on behalf of the United States Government.

**Spaceflight's Affirmative Defense 6: No attorney fees**

Spaceflight contends that DZYNE cannot recover attorney fees under the parties' contract.

**DZYNE's Affirmative Defense 1 to Spaceflight's Counterclaims: Waiver**

Spaceflight's claims are barred by reason of waiver.

**DZYNE's Affirmative Defense 2 to Spaceflight's Counterclaims: Impossibility**

Spaceflight's claims are barred by the doctrine of impossibility.

**DZYNE's Affirmative Defense 3 to Spaceflight's Counterclaims: Frustration of Purpose**

Spaceflight's claims are barred by the doctrine of frustration of purpose.

**DZYNE's Affirmative Defense 4 to Spaceflight's Counterclaims: Failure to Mitigate**

Spaceflight failed to mitigate its damages.

e.  **Elements Required to Establish Defendant's Counterclaims, Defendant's Affirmative Defenses, and DZYNE's Affirmative Defenses to Spaceflight's Counterclaims (L.R. 16-4.1(e))**

**Counterclaim 1: Anticipatory Breach**

To prove its claim for anticipatory breach of contract, Spaceflight must prove all of the following:

1. That DZYNE and Spaceflight entered into a contract: the LSA and the Transfer Agreement;
2. That Spaceflight would have been able to fulfill the terms of the Agreements;

3. That DZYNE clearly and positively indicated, by words or conduct, that it would not or could not meet the terms of the Agreements,

4. That Spaceflight was harmed; and

5. That DZYNE's anticipatory breach of the Agreements was a substantial factor in causing Spaceflight's harm.

CACI 324.

**Counterclaim 2: Breach of the duty of good faith and fair dealing**

To prove its claim for breach of the duty of good faith and fair dealing, Spaceflight must prove all of the following:

1. That DZYNE and Spaceflight entered into a contract: the LSA and the Transfer Agreement;

2. That Spaceflight did all, or substantially all, of the significant things that the Agreements required it to do, or Spaceflight was excused from certain requirements of the Agreements because of Spaceflight's failure to adhere to contract terms;

3. That all conditions required for DZYNE's performance had occurred;

4. That DZYNE breached the Agreements;

5. That by breaching the Agreements, DZYNE did not act fairly and in good faith;

6. That Spaceflight was harmed; and

7. That DZYNE's bad faith breach of the Agreements was a substantial factor in causing Spaceflight's harm.

CACI 324.

**Counterclaim 3: Breach of Contract**

To prove its claim for breach of contract, Spaceflight must prove all of the following:

1. That DZYNE and Spaceflight entered into a contract: the LSA and the Transfer Agreement;

2. That Spaceflight did all, or substantially all, of the significant things that the Agreements required it to do, or Spaceflight was excused from certain requirements of the Agreements because of Spaceflight's failure to adhere to contract terms;

3. That DZYNE breached the Agreements;

4. That Spaceflight was harmed; and

5. That DZYNE's breach of the Agreements was a substantial factor in causing Spaceflight's harm.

CACI 303.

### Counterclaim 4: Declaratory Judgment

To prove its claim for declaratory judgment, Spaceflight must prove the following:

1. That DZYNE and Spaceflight entered into a contract: the Launch Services Agreement ("LSA"), the Amended LSA, and the Transfer Agreement (together, the "Agreements");

2. That Spaceflight did all, or substantially all, of the significant things that the Agreements required it to do;

3. That DZYNE breached the Agreements.

CACI 303.

### Spaceflight's Affirmative Defense 1: No damages and therefore no standing

This counterclaim is simply a contention that DZYNE will not be able to prove its damages. There are no elements for this affirmative defense.

*Vogel v. Huntington Oaks Del. Partners, LLC*, 291 F.R.D. 438, 442 (C.D. Cal. 2013) (defendant's allegation of "no damage or injury" was "not an affirmative defense because it merely point[ed] to a defect in [the plaintiff's] case")

### Spaceflight's Affirmative Defense 2: Unclean hands

Spaceflight contends that DZYNE has unclean hands from its anticipatory breach of contract. To the extent that the defense of unclean hands applies to contract claims (and it should not based on the authority cited below), the elements of this affirmative defense are the same elements which Spaceflight must prove for its Counterclaim No. 1 for anticipatory breach, set forth above.

*Cann v. Woodborough Dev. Co. (In re Woodborough Dev. Co.)*, 1997 U.S. App. LEXIS 25175, at *2 (9th Cir. Sept. 15, 1997) ("The doctrine of 'unclean hands' is equitable, not legal, and generally has no application to damages for breach of contract.")

**Spaceflight's Affirmative Defense 3: Public policy**

Spaceflight contends that DZYNE's claims are barred because they are against public policy and would require performance of an illegal act under 31 U.S.C. § 1502(a). This statute deals with appropriations law, and it is inapplicable to DZYNE's claims for breach of contract and unjust enrichment. Nothing in appropriations law precludes claims by private parties under a contract. For this reason, there are no elements for this affirmative defense.

**Spaceflight's Affirmative Defense 4: Public policy**

Spaceflight contends that DZYNE's claims are barred because they are against public policy and would require performance of an illegal act under Defense Federal Acquisition Regulation Supplement ("DFARS") 252.244-7000. This provision was amended in 2023, after the LSA was executed on March 31, 2021. The provision applicable when the LSA was executed allowed DFARS clauses to flow down in subcontracts. Thus, there are no elements for this affirmative defense.

**Spaceflight's Affirmative Defense 5: DZYNE lacks standing to bring claims on behalf of the United States Government**

Spaceflight contends that DZYNE's lacks standing to bring claims on behalf of the United States Government. DZYNE brings its claims on its own behalf, and not on behalf of the United States Government. Thus, there are no elements for this affirmative defense.

**Spaceflight's Affirmative Defense 6: No attorney fees**

Spaceflight contends that DZYNE cannot recover attorney fees under the parties' contracts. DZYNE concurs. Attorney fees are not recoverable by either party.

**DZYNE's Affirmative Defense 1 to Spaceflight's Counterclaims: Waiver**

To prove its affirmative defense of waiver, DZYNE must prove:

1. Spaceflight knew of the LSA's provision setting forth a launch window for the WeatherSat project;

2. Spaceflight freely and knowingly gave up its right to require DZYNE to deliver to Spaceflight a WeatherSat satellite within the LSA's stated launch window by continuing to perform under the terms of the LSA after expiration of the launch window.

CACI 336.

**DZYNE's Affirmative Defense 2 to Spaceflight's Counterclaims: Impossibility**

To prove its affirmative defense of impossibility, DZYNE must prove:

1. AFRL cancelled the WeatherSAT project without delivering the WeatherSat satellite to DZYNE such that it could be furnished to Spaceflight;
2. Neither DZYNE nor Spaceflight reasonably could have anticipated that event when they entered into the Agreements;
3. DZYNE did not cause AFRL to terminate the WeatherSAT project; and
4. AFRL's cancellation of the WeatherSAT project made DZYNE's performance under the Agreements impracticable because of an extreme and unreasonable difficulty, expense, or loss.

*Oosten v. Hay Haulers Dairy Employees & Helpers Union*, 45 Cal. 2d 784, 788 (1955).

**DZYNE's Affirmative Defense 3 to Spaceflight's Counterclaims: Frustration of Purpose**

To prove its affirmative defense of frustration of purpose, DZYNE must prove:

1. DZYNE and Spaceflight contemplated that the principal purpose of the Agreements was to launch the WeatherSat satellite;
2. AFRL cancelled the WeatherSAT project without delivering the WeatherSat satellite to DZYNE such that it could be furnished to Spaceflight;
3. Neither DZYNE nor Spaceflight reasonably could have anticipated that event when they entered into the Agreements;
4. DZYNE did not cause AFRL to terminate the WeatherSat project;
5. DZYNE's performance of the Agreements was substantially frustrated by AFRL's cancellation of the WeatherSat project.

*Hackfeld & Co., Ltd. v. Castle*, 186 Cal. 53, 57–58 (1921).

**Affirmative Defense 4 to Spaceflight's Counterclaims: Failure of Condition Precedent**

To prove its defense of failure of a condition precedent, DZYNE must prove:

1. DZYNE and Spaceflight contemplated that the principal purpose of the Agreements was to launch the WeatherSat satellite;

2. The rights and duties of DZYNE under the Agreement were dependent upon AFRL procuring and delivering the WeatherSat satellite;

3. AFRL cancelled the WeatherSAT project without delivering the WeatherSat satellite to DZYNE such that it could be furnished to Spaceflight; and

4. Spaceflight must prove the condition that AFRL delivered the WeatherSat satellite was satisfied.

CACI 321.

**Affirmative Defense 5 to Spaceflight's Counterclaims: Mitigation of Damages**

To prove its defense of failure to mitigate damages, DZYNE must prove:

1. That Spaceflight could have avoided damages through reasonable efforts and without undue risk or hardship.

CACI 358.

  **f.**  **Brief Description of Key Evidence Relied Upon in Opposition to Each Counterclaim and Affirmative Defense (L.R. 16-4.1(f))**

**Counterclaim 1: Anticipatory Breach**

  Spaceflight's counterclaims fail based on the same evidence that DZYNE's will use to prove its claims. DZYNE will demonstrate that either that the LSA and Amended LSA permitted DZYNE to terminate the Parties' agreement for the Government's convenience and that the Government terminated the WeatherSAT Project for convenience or that DZYNE had the unconditional right to terminate the LSA and Amended LSA for DZYNE's convenience.  This will be demonstrated by the Agreements, the Government Directives transmitted to DZYNE to cancel the WeatherSAT Project, and other communications between the parties and the Government.  Further, the testimony of Ed Smetak and Sarah Wilt will support this construction of the Agreements.  The testimony of Professor Christopher Yukins will rebut the expert testimony of Spaceflight's expert witness, John Chierichella, to the extent that Mr. Chierichella is permitted to provide what DZYNE believes is inadmissible expert testimony of his legal opinions and his assumptions about the states of mind of the parties involved in the dispute.

Under either theory, the jury must determine that Spaceflight breached the Parties' Agreements when it refused to recognize the termination of the Amended LSA and failed to produce a termination settlement proposal. Spaceflight's refusal to recognize the termination of the Amended LSA and failure to produce a termination settlement proposal will be supported by Spaceflight's own admissions that it failed to do either.

Additionally, AFRL's termination of the WeatherSAT project made DZYNE's performance under the Agreements impossible and frustrated the very purpose of the Agreements. Finally, Spaceflight suffered no damages. The testimony of Ed Smetak and Marcy Mabry, as well as Spaceflight's interrogatory answers, will support the lack of damages.

**Counterclaim 2: Breach of the Implied Covenant of Good Faith and Fair Dealing**

This counterclaim fails based on the same evidence that will prove that Counterclaim 1 fails.

**Counterclaim 3: Breach of Contract**

This counterclaim fails based on the same evidence that will prove that Counterclaim 1 fails.

**Counterclaim 4: Declaratory Judgment**

This counterclaim fails based on the same evidence that will prove that Counterclaim 1 fails.

g. **Third Party Claims, Elements, Evidence (L.R. 16-4.1(g))**

None.

h. **Identification of Evidentiary Issues with Positions (L.R. 16-4.1(h))**

DZYNE is a motion *in limine* seeking an order to exclude testimony from Spaceflight's expert John Chierichella. The grounds for that motion ate that (a) Mr. Chierichella's legal conclusions are inadmissible, (b) Mr. Chirichella cannot make SF's legal arguments from the witness stand, (c) Mr. Chirichella cannot testify as to the state of mind of DZYNE, Spaceflight, or the United States Government, and (d) Mr. Chierichella cannot offer a narrative summary of record evidence.

DZYNE understands that Spaceflight intends to file a motion *in limine* regarding Professor Christopher Yukins, DZYNE's expert to rebut Mr. Chierichella, contending that Professor Yukins should not be allowed to testify.

i. **Identification of Any Issues of Law (L.R. 16-4.1(i))**

1. Whether the LSA and Amended LSA's plain language provides DZYNE the unconditional right to terminate the LSA for DZYNE's convenience in accordance with FAR 52.249-2.
2. Whether the LSA and Amended LSA's plain language provides DZYNE the unconditional right to terminate the LSA for the United States Government's convenience in accordance with FAR 52.249-2.
3. Whether the LSA and Amended LSA's plain language requires the United States Government to terminate for convenience the WeatherSAT Project as a condition precedent to DZYNE's termination of the LSA.
4. Whether the United States Government terminated the WeatherSAT Project for its convenience either explicitly or constructively.

All of these legal issues are addressed in detail in DZYNE's motion for summary judgment, ECF No. 61.

### III.  Bifurcation of Issues (L.R. 16-4.3)

The Parties do not request bifurcation of any issues.

### IV.  Jury Trial (L.R. 16-4.4)

DZYNE timely served a jury demand. Each party also has a declaratory judgment claim to be decided by the Court.

### V.  Attorney Fees (L.R. 16-4.5)

The parties' Agreements do not include fee shifting provisions.

### VI.  Abandonment of Issues (L.R. 16-4.6)

DZYNE's affirmative defenses not addressed herein are abandoned.

| | | |
|---|---|---|
| Dated: June 25, 2025. | | HOLLAND & HART LLP |
| | By: | *s/ Craig Stewart*<br>Craig Stewart (admitted *pro hac vice*)<br>Shaun C. Kennedy (admitted *pro hac vice*)<br>Alexandria E. Pierce (admitted *pro hac vice*)<br>HOLLAND & HART LLP<br>555 Seventeenth Street, Suite 3200<br>Denver, Colorado 80202<br>Telephone: (303) 295-8000<br>cstewart@hollandhart.com<br>sckennedy@hollandhart.com<br>aepierce@hollandhart.com |
| | | Shane M. Biornstad<br>100 Spectrum Center Drive, Suite 600<br>Irvine, California 92618<br>Telephone: (949) 340-3400<br>sbiornstad@shulmanbastian.com |
| | | Attorneys for DZYNE Technologies, LLC |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2025, I have caused the foregoing to be served via electronic mail to the following e-mail addresses:

Joshua K. Leader
jleader@leaderberkon.com

Arthur I. Willner
awillner@leaderberkon.com

I also certify the document and a copy of the Notice of Electronic Filing was served on the following non-CM/ECF participants:

There are no non-participants.

s/ *Craig Stewart*

35123027_v1